HANSON BRIDGETT LLP
RYAN L. EDDINGS, SBN 256519
reddings@hansonbridgett.com
2440 Tulare Street, Suite 200
Fresno, California 93721
Telephone:   (559) 220-3730
Facsimile:   (559) 220-3740

**Attorneys for Plaintiff**
BEST'S STUDIO, INC. d/b/a
THE ANSEL ADAMS GALLERY

Matthew L. Rollin (SBN 332631)
SRIPLAW, P.A.
8730 Wilshire Boulevard, Suite 350
Beverly Hills, California 90211
Telephone:   (323) 452-5600
Facsimile:   (561) 404-4353
matthew.rollin@sriplaw.com

**Attorneys for Plaintiff**
THE ANSEL ADAMS PUBLISHING
RIGHTS TRUST

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

BEST'S STUDIO, INC., a California corporation d/b/a THE ANSEL ADAMS GALLERY; and THE ANSEL ADAMS PUBLISHING RIGHTS TRUST,

        Plaintiffs,

        v.

BRITTANY MOOREFIELD, an individual; BMBW ART LLC, a California limited liability company; and DOES 1 through 50, inclusive,

        Defendants.

Case No. **'26 CV 4058 JO    DDL**

**COMPLAINT**

## I.    INTRODUCTION

1.    This action arises from a brazen scheme by Defendant Brittany Moorefield — the Gallery's own Director of Fine Art Photography Sales — to exploit her position of trust to register a confusingly similar domain name, create

impersonating email accounts, misappropriate the Gallery's trade secrets and confidential proprietary information, and divert the Gallery's clients and business opportunities to her own competing enterprise, Defendant BMBW Art LLC, for her personal financial gain.

2.      While still employed by the Gallery as Director of Fine Art Photography Sales, Moorefield formed BMBW Art LLC — a business entity engaged in the sale and brokering of fine art photography, including Ansel Adams photographs — in direct competition with her employer. On December 31, 2025, Moorefield registered the domain name ansel-adams.com — a domain virtually identical to the Gallery's established domain, anseladams.com, differing only by the addition of a hyphen. She then created the email address brittany@ansel-adams.com, mimicking the Gallery's legitimate email convention (firstname@anseladams.com), and used that email to send invoices and communications to Gallery clients, creating the false impression that she was acting on the Gallery's behalf.

3.      On May 19, 2026, a client's art consultant contacted the Gallery, concerned that the client was purchasing photographs from The Ansel Adams Gallery but invoices were coming from "BMBW Arts LLC" via brittany@ansel-adams.com. The Gallery's investigation uncovered that Moorefield had been operating a competing side business using the Gallery's trade secrets — including its client lists, client collecting interests, pricing information, and confidential proprietary data — while drawing a salary as the Gallery's most senior sales executive.

4.      Plaintiffs bring this action to enjoin Defendants' unlawful conduct, recover the profits Defendants wrongfully obtained, obtain compensatory and exemplary damages, and secure the transfer of the infringing domain name.

## II.   PARTIES

5.      Plaintiff BEST'S STUDIO, INC., a California corporation doing business as THE ANSEL ADAMS GALLERY ("Gallery"), has its principal place of business at 811 Woodside Drive, Woodside, California 94062. The Gallery has

Case No.

23290760.1

continuously operated a fine art gallery specializing in original Ansel Adams photographs and related fine art photography. The Gallery operates in Yosemite National Park, has used the domain name anseladams.com as its primary website for over twenty-five years, and is widely recognized as the authoritative source for Ansel Adams photographs and Gallery services.

6. Plaintiff THE ANSEL ADAMS PUBLISHING RIGHTS TRUST (the "Trust") is a California general partnership. The Trust's partners are The Ansel Adams Publishing Rights Trust for the benefit of Michael Adams, and The Ansel Adams Publishing Rights Trust for the Benefit of Anne Adams Helms. AAPRT was established by Ansel Adams personally in 1976 for the purpose of preserving and managing his intellectual property and legacy for the benefit of his descendants. The Trust owns the federal trademark registrations for the marks ANSEL ADAMS and THE ANSEL ADAMS GALLERY identified below, and is registered with the California Secretary of State as the exclusive owner of Ansel Adams' post-mortem right of publicity pursuant to California Civil Code § 3344.1 The Trust joins this action to enforce the Trust's trademarks and intellectual property, protect the associated goodwill, and obtain relief arising from Defendants' unauthorized use of those marks and the domain name ansel-adams.com.

7. Defendant BRITTANY MOOREFIELD ("Moorefield") is an individual residing at 4475 Philbrook Square, San Diego, California 92130. Moorefield was employed by the Gallery as Director of Fine Art Photography Sales from approximately October 1, 2015 to June 15, 2026.

8. Defendant BMBW Art LLC ("BMBW") is a California limited liability company. BMBW was organized under the laws of the State of California on April 28, 2025 (File No. B20250095057), with its principal office, mailing address, and agent for service of process address all at 4475 Philbrook Square, San Diego, California 92130. Moorefield is named as BMBW's organizer, agent for service of process, and sole manager. On information and belief, Moorefield is BMBW's sole

23290760.1

member and exercises exclusive control over its operations, finances, and business activities. See information from the California Secretary of State attached hereto as Exhibit "E." At least one additional individual — Christopher Silva-Broussard — has acted on behalf of Moorefield and BMBW, executing business agreements on Moorefield's behalf in connection with BMBW's acquisition of Ansel Adams photographs.

9.     Plaintiffs are presently ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue those Defendants by fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each fictitiously named Defendant is legally responsible in some manner for the acts, omissions, events, and damages alleged in this Complaint.

10.     Plaintiffs are informed and believe, and on that basis allege, that DOES 1 through 50 include, without limitation, persons or entities who assisted, participated in, authorized, ratified, concealed, or benefited from: (a) the registration, administration, hosting, or use of the domain name ansel-adams.com; (b) the creation, administration, or use of email accounts associated with that domain, including brittany@ansel-adams.com; (c) the diversion of Gallery clients, vendors, consignors, and business opportunities; (d) the issuance of invoices or receipt of funds through BMBW or accounts controlled by Moorefield; (e) the possession, use, transfer, deletion, concealment, or retention of Gallery trade secrets, confidential information, devices, records, or data; and/or (f) transactions involving Ansel Adams photographs or other fine art photography identified through Gallery relationships, information, or opportunities.

11.     At all relevant times, each Defendant, including DOES 1 through 50, acted as the agent, servant, employee, representative, partner, joint venturer, alter ego, aider and abettor, co-conspirator, or co-participant of each other Defendant in doing the acts alleged herein, and acted within the course and scope of that agency,

23290760.1
Case No.

employment, representation, partnership, joint venture, alter-ego relationship, aiding-and-abetting relationship, conspiracy, or common enterprise. Each Defendant authorized, directed, approved, ratified, adopted, concealed, participated in, or accepted the benefits of the acts alleged herein.

12.     Plaintiffs are informed and believe, and on that basis allege, that Moorefield organized, managed, controlled, and operated BMBW as the vehicle through which she carried out the wrongful conduct alleged herein, including the diversion of Gallery clients, vendors, consignors, transactions, proceeds, confidential information, trade secrets, and business opportunities. BMBW acted through Moorefield and others acting on her behalf, and Moorefield personally authorized, directed, controlled, participated in, and benefited from BMBW's wrongful acts.

13.     Plaintiffs are informed and believe, and on that basis allege, that Defendants, and each of them, knowingly agreed, coordinated, and acted in concert to accomplish the wrongful objectives alleged herein, including the diversion of Gallery clients, vendors, consignors, transactions, proceeds, confidential information, trade secrets, and business opportunities; the use of the confusingly similar ansel-adams.com domain and associated email accounts; and the concealment of those activities from the Gallery. In furtherance of that common plan, Defendants committed the wrongful acts alleged in this Complaint. Each Defendant is liable for the acts of the others committed in furtherance of the common plan to the fullest extent permitted by law.

## III.     JURISDICTION AND VENUE

14.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (Second Cause of Action), the Lanham Act, 15 U.S.C. § 1114 and § 1125 (Third, Fourth, and Fifth Causes of Action), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Thirteenth Cause of Action).

Case No.

15.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims, which arise from the same case or controversy as the federal claims.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District, a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of this action — including the ansel-adams.com domain — is administered from this District.

17.    This Court has personal jurisdiction over both Defendants. Moorefield resides in this District and conducted the acts complained of from this District. BMBW is organized under the laws of California, maintains its principal place of business in this District, and conducted the acts complained of from this District.

IV.    FACTUAL ALLEGATIONS

A.    The Ansel Adams Gallery — History and Operations

18.    The Ansel Adams Gallery is one of the oldest and most respected fine art galleries in the United States, with a continuous operating history spanning more than 125 years. The Gallery specializes in original Ansel Adams photographs — gelatin silver prints created by Ansel Adams during his lifetime — as well as other fine art photography.

19.    The Gallery operates in Yosemite National Park and uses the domain name anseladams.com for its primary website, email communications, and commercial operations. The anseladams.com domain has been continuously developed and used in commerce for over twenty-five years.

20.    The Gallery's website at anseladams.com actively displays ANSEL ADAMS GALLERY branding, features an "Ansel Adams Exclusive Collection," and offers original gelatin silver photographs and signed prints for sale. The Gallery's email convention for its employees and personnel is firstname@anseladams.com.

21.    The Gallery maintains significant trade secrets and confidential

23290760.1

Case No.

proprietary information, including but not limited to:

a.   Client lists, including the identities, contact information, and collecting interests of the Gallery's private collector clients, institutional clients, and prospective clients;

b.   Client purchase histories, including which photographs each client has purchased, the prices paid, and the client's stated collecting goals and preferences;

c.   Consignor relationships and terms, including the identities of consignors, the terms on which artwork is consigned, commission structures, and pricing agreements;

d.   Pricing and valuation methodologies, including the Gallery's proprietary methods for pricing Ansel Adams photographs based on edition, condition, provenance, print date, and market conditions;

e.   Authentication methods and data, including the Gallery's proprietary methods and accumulated knowledge for authenticating Ansel Adams photographs; and

f.   Marketing strategies, business development plans, and other nonpublic business information.

22.   The Gallery's trade secrets and confidential proprietary information derive independent economic value from not being generally known to the public or to competitors, and the Gallery takes reasonable measures to maintain the secrecy of this information, including limiting access to employees on a need-to-know basis, using password-protected systems, and requiring employees to acknowledge confidentiality obligations. The Gallery restricts access to its servers via secure access points, requiring password authentication regardless of location. The Gallery's key resource files (*i.e.*, Point of Sale, Fine Print Inventory, Accounting, *etc.*) are password protected, with all users having differentiated access and permissions.

**B.    Plaintiffs' Trademarks**

23.   The Trust owns the following United States trademark registrations:

7

Case No.

COMPLAINT

| Mark | IC | First Use/First Use in Commerce | Reg. No. | Reg. Date |
|---|---|---|---|---|
| **ANSEL ADAMS THE ANSEL ADAMS GALLERY** (Stylized/Design) | **Cl. 042**. retail store services and mail order services in field of gifts, books, art, stationery, handcrafts, posters, film, [cassette recordings,] post cards, tee shirts, booklets, note cards, book marks and photographs and photographic equipment rental services | 1988 | 1703868 | 07/28/1992 |
| **ANSEL ADAMS** (Standard Character) | **Cl. 016**. Prints and printed materials, namely, books and booklets in the field of photography and photographic images, photographic prints and reproductions, posters, calendars, notepads and stationery | 1972 | 4177732 | 07/24/2012 |
| **ANSEL ADAMS** (Standard Character) | **Cl. 009**. Computer software, namely, downloadable software in the field of photography for use on cell phones, | 2010 | 4656467 | 12/16/2014 |

8

COMPLAINT

23290760.1

| Mark | IC | First Use/First Use in Commerce | Reg. No. | Reg. Date |
|---|---|---|---|---|
| | mobile phones, smart phones, portable media players, hand held computers, and other mobile devices; downloadable electronic publications, namely, books and booklets featuring the subject of photography; ebooks featuring the subject of photography | | | |

24. The Trust's trademark registrations are valid and subsisting. Registration Nos. 4,177,732 and 1,703,868 have become incontestable pursuant to 15 U.S.C. § 1065, and Registration No. 4,656,467 remains eligible for incontestability. The term "trademarks" or "marks" refers to the trademarks and registrations above.

25. The Gallery is an authorized licensee and user of the trademarks in connection with the goods and services associated with the registrations.

26. The trademarks have been continuously used in commerce in connection with the goods and services identified in the registrations, including the Gallery's retail operations, sale of fine art photography, website, client relationships, and related commercial activities. The marks are famous and distinctive and are widely recognized in the fine art photography market. Substantial investments have been made in promoting, advertising, and building goodwill in the marks by the Trust and

COMPLAINT
Case No.

the Gallery.

### C. Moorefield's Employment and Position of Trust

27. Moorefield was employed by the Gallery as Director of Fine Art Photography Sales. In that capacity, Moorefield had direct access to the Gallery's most sensitive trade secrets and confidential proprietary information, including the Gallery's complete client lists, client collecting interests and purchase histories, consignor relationships and terms, pricing and valuation information, and authentication information.

28. Moorefield's position required her to cultivate and maintain relationships with the Gallery's private collector clients, institutional clients, consignors, dealers, and other industry contacts. Moorefield was entrusted with knowledge of which clients were interested in which photographs, what prices clients had previously paid, what photographs were available through the Gallery's consignment channels, and the Gallery's valuation and pricing methodologies.

29. As a senior employee in a fiduciary capacity, Moorefield owed the Gallery duties of loyalty, good faith, and candor. These duties required Moorefield, among other things, not to compete with the Gallery during her employment, not to divert the Gallery's business opportunities for personal gain, not to use the Gallery's trade secrets and confidential proprietary information for purposes outside her employment, and to disclose any conflicts of interest.

### D. Formation of BMBW Art LLC

30. On April 28, 2025, while still employed by the Gallery, Moorefield organized BMBW under the laws of the State of California (File No. B20250095057). Moorefield designated herself as the sole organizer, the agent for service of process, and the sole manager of the LLC.

31. On information and belief, Moorefield is the sole member and beneficial owner of BMBW. BMBW was formed for the purpose of competing with the Gallery by selling, brokering, consigning, appraising, and facilitating transactions in fine art

photography, including original Ansel Adams photographs — the same category of goods that is the Gallery's core business.

32.     Moorefield did not disclose the formation of BMBW to the Gallery. Moorefield did not disclose her outside business activities to the Gallery. Moorefield did not seek or obtain the Gallery's authorization or consent to form a competing business, to use the Gallery's trade secrets or confidential proprietary information in connection with that business, or to solicit or transact business with the Gallery's clients.

**E.      Registration of ansel-adams.com**

33.     On December 31, 2025, the domain name ansel-adams.com (Registry Domain ID: 3053206476_DOMAIN_COM-VRSN) was registered through Squarespace Domains LLC. At the time of registration, Moorefield was actively employed by the Gallery as Director of Fine Art Photography Sales.

34.     The WHOIS record for ansel-adams.com does not publicly disclose the registrant's identity — all registrant contact fields display placeholder values. On information and belief, Moorefield registered, or caused to be registered, the domain name ansel-adams.com, either individually or through BMBW.

35.     The domain name ansel-adams.com is virtually identical to the Gallery's established domain name, anseladams.com. The only difference is the insertion of a hyphen between "ansel" and "adams." The domain name incorporates the ANSEL ADAMS trademarks in their entirety.

36.     As of the date of this Complaint, the domain ansel-adams.com displays only a placeholder landing page stating "ansel-adams.com — We're under construction. Please check back for an update soon." No legitimate website has been developed at the domain.

37.     The nameservers for ansel-adams.com are configured as NS-CLOUD-E1 through E4.GOOGLEDOMAINS.COM, indicating that Google services (including Google Workspace for email) are associated with the domain.

23290760.1

Case No.

### F.   Creation of Impersonating Email Accounts

38.   Moorefield created the email address brittany@ansel-adams.com using the ansel-adams.com domain. The Gallery's legitimate email convention for its employees is firstname@anseladams.com. The email address brittany@ansel-adams.com closely mimics the format that would be used for a Gallery employee named Brittany — brittany@anseladams.com — and is calculated to create the false impression that communications sent from that address originate from the Gallery or an authorized Gallery representative.

39.   On information and belief, Moorefield used the email address brittany@ansel-adams.com to send invoices, communications, and solicitations to Gallery clients and business contacts, creating the false impression of affiliation with, authorization by, or connection to the Gallery.

### G.   Diversion of Gallery Clients and Business Opportunities

40.   On or about May 19, 2026, a client's art consultant contacted the Gallery, expressing concern that the client was purchasing photographs from The Ansel Adams Gallery but invoices were coming from "BMBW Arts LLC" via the email address brittany@ansel-adams.com.

41.   An invoice produced in connection with the Gallery's investigation — Invoice No. 0000061, dated April 17, 2026, from BMBW (4475 Philbrook Square, San Diego, CA 92130) — invoices the sale of an Ansel Adams "Aspens Northern New Mexico" (1958), an original gelatin silver photograph approximately 18" x 23", signed, for $78,000.00. The invoice directs payment by wire transfer to "Recipient: Brittany Moorefield," at Wells Fargo Bank. A true and correct copy of Invoice No. 0000061 is attached hereto as Exhibit "A."

42.   A second invoice — Invoice No. 0000060, also dated April 17, 2026, from BMBW — invoices the sale of another Ansel Adams "Aspens Northern New Mexico" (1958), an original gelatin silver photograph approximately 20" x 16", signed, for $46,000.00. This invoice likewise directs payment by wire transfer to

23290760.1

Case No.

COMPLAINT

"Recipient: Brittany Moorefield" at the same Wells Fargo bank account. A true and correct copy of Invoice No. 0000060 is attached hereto as Exhibit "B."

43. The "Billed To" fields on both invoices are billed to a known client identified in this Complaint as "Client A" at one of Client A's Business Entities. This client has been a client of the Gallery.

44. The invoice numbers — 0000060, 0000061, and 0000064 — suggest that BMBW issued at least 64 invoices in connection with its business activities. On information and belief, BMBW has brokered, facilitated, invoiced, or completed additional transactions beyond those reflected in Invoice Nos. 0000060, 0000061, and 0000064, including transactions involving Gallery clients, prospective clients, consignors, vendors, purchasers, or artwork identified through Gallery trade secrets and confidential proprietary information.

45. On January 30, 2024, Client A of one of Client A's Business Entities — the same client billed on BMBW Invoices 0000060 and 0000061 — sent an email to the Gallery's originals@anseladams.com email address, writing: "I am curious if there are any originals works available for purchaser depicting skiers?" That email was forwarded from the originals@anseladams.com account to Gallery principal Matthew Adams on January 30, 2024. A true and correct copy of this email is attached hereto as Exhibit "C."

46. On information and belief, Moorefield had access to and monitored the originals@anseladams.com inbox as part of her duties as Director of Fine Art Photography Sales. Client A's January 2024 inquiry — a Gallery client reaching out through the Gallery's legitimate email address to inquire about purchasing original Ansel Adams photographs — was precisely the type of business opportunity that Moorefield was responsible for handling on the Gallery's behalf. Approximately two years later, Moorefield invoiced that same client — Client A at one of Client A's Business Entities — a total of $124,000 for two original Ansel Adams photographs, not through the Gallery, but through BMBW via the impersonating email address

Case No.

23290760.1

brittany@ansel-adams.com. The sequence supports a reasonable inference that Client A was a Gallery client who first came to the Gallery seeking original Ansel Adams photographs, and that Moorefield ultimately diverted Client A's business to her own competing enterprise. On information and belief, Moorefield used the Gallery's trade secrets — including Client A's identity, contact information, collecting interests, and purchase history — to cultivate and ultimately divert Client A from the Gallery to BMBW.

47.     The Gallery's preliminary investigation demonstrates that Moorefield was in contact with a long-time vendor of the Gallery, "Vendor A," about consigning or brokering some photographs, including two rare and valuable murals. When interviewed about her conduct, Moorefield denied performing consignment work. However, Moorefield directed Vendor A to execute a Non-Disclosure and Non-Circumvention Agreement ("NDA") with BMBW on or about March 12, 2026. A true and correct copy of this NDA is attached hereto as Exhibit "D."

48.     The NDA is significant not only for the scope of the transaction it memorializes, but for what it reveals about Moorefield's intent to conceal her competing activities from the Gallery. Section 2.4 of the NDA expressly prohibits the receiving party from disclosing confidential information to "any members of or related to the Ansel Adams Gallery or the Adams family." Moorefield — while still employed by the Gallery as its Director of Fine Art Photography Sales — thus structured BMBW's contractual relationships to ensure that the Gallery would not learn of Moorefield's competing business activities. The deliberate inclusion of a contractual prohibition specifically targeting the Gallery and the Adams family supports a reasonable inference that Moorefield knew her conduct was unauthorized, understood the Gallery would object if it discovered her activities, and took affirmative steps to prevent that discovery.

49.     The NDA's signature-page addendum further reveals the scale of BMBW's operations. The addendum states that the agreement "pertains to, but is not

14

23290760.1

limited to, the acquisition of photographs printed by or signed by Ansel Adams, in addition to photographs printed by Vendor A, as presented in person on 3/11/2026 and 3/12/2026, in addition to supplemental photographs to be selected and provided by Vendor A within 60 days time." The addendum specifies an "agreed upon final amount of $250,000.00." This $250,000 transaction — for the acquisition of original Ansel Adams photographs from a long-time Gallery vendor — was negotiated and executed while Moorefield was still employed by the Gallery. Combined with the $124,000 invoiced to Client A (Exhibits A and B), and the additional Half Dome transaction reflected in Exhibits F, G, and H, BMBW's identified business activities involved multiple high-value transactions involving original Ansel Adams photographs while Moorefield remained employed by the Gallery. On information and belief, BMBW conducted additional transactions beyond those reflected in Exhibits A, B, D, F, G, and H.

50.    The NDA was signed on behalf of BMBW by "Christopher Silva-Broussard, acting on behalf of Brittany Moorefield." On information and belief, Christopher Silva-Broussard is an agent, associate, or representative of Moorefield and/or BMBW who has participated in, facilitated, or had knowledge of BMBW's business activities, including the acquisition of Ansel Adams photographs from Vendor A and other transactions conducted through BMBW. Silva-Broussard's involvement demonstrates that BMBW's operations extended beyond Moorefield alone and involved at least one additional individual acting on Moorefield's behalf and at her direction.

51.    Plaintiffs' investigation also identified additional documents showing that BMBW Art LLC was involved in another high-value transaction involving an original Ansel Adams mural-sized photograph, further confirming that BMBW Art LLC was not merely preparing to compete, but was actively brokering, consigning, selling, invoicing, and arranging shipment of high-value Ansel Adams works while Moorefield remained employed by the Gallery.

15

COMPLAINT

23290760.1

52.     Plaintiffs obtained a document titled "Consignment Agreement" identifying BMBW as "Consignee," and identifying two persons or entities as "Consignor" (collectively, "Consignor B"). The Consignment Agreement identifies the goods to be sold as "Half Dome, Merced River, Winter," an original gelatin silver mural-sized photograph by Ansel Adams, with a stated price of $525,000. The Consignment Agreement further states that BMBW would receive a flat fee of $275,000 for the sale of the goods, that BMBW would set the price, and that the agreement was exclusive, such that BMBW alone would be permitted to sell the goods. A redacted copy of the Consignment Agreement is attached as Exhibit "F".

53.     Plaintiffs also obtained a document titled "Bill of Sale of Personal Property" concerning the same or related Ansel Adams mural photograph. The Bill of Sale identifies a U.K.-based purchaser and purchasing entity ("Client B") and identifies Consignor B as seller. The Bill of Sale states a purchase price of $525,000 for an "Ansel Adams Mural-Photograph" and includes representations concerning ownership, authority to sell, absence of liens, provenance, authenticity, and transfer of title. A redacted copy of the Bill of Sale is attached as Exhibit "G".

54.     Plaintiffs further obtained BMBW Invoice No. 0000064, dated November 26, 2025, issued to Client B. The invoice identifies the artwork as Ansel Adams, "Half Dome, Merced River, Winter" (1938), Gelatin Silver Mural, framed to 51 x 71 inches (130 x 180 cm). The invoice lists a rate of $775,000 for the artwork and marks that item "PAID IN FULL." The same invoice separately charges $34,875 for "International Shipping with Full Value Insurance." A redacted copy of Invoice No. 0000064 and associated wire instructions is attached as Exhibit "H".

55.     The wire instructions associated with BMBW Invoice No. 0000064 identify "Moorefield 2015 Living Trust" as the beneficiary account name/recipient. The invoice therefore indicates that at least transaction-related payments for BMBW's handling, shipment, or sale of the original Ansel Adams mural photograph were directed to an account associated with Moorefield, rather than to the Gallery.

16

COMPLAINT

23290760.1

56.     BMBW Invoice No. 0000064 also confirms that BMBW had issued at least 64 invoices in connection with its business activities. Taken together with BMBW Invoice Nos. 0000060 and 0000061 to Client A, and the BMBW agreement involving Vendor A, these documents support a reasonable inference that Moorefield and BMBW engaged in multiple high-value transactions involving Ansel Adams photographs while Moorefield remained employed by the Gallery.

57.     On information and belief, Moorefield used Gallery trade secrets and confidential proprietary information—including client and collector information, vendor and consignor relationships, market knowledge, pricing information, valuation information, authentication information, and knowledge of available works—to identify, structure, price, negotiate, broker, invoice, or facilitate the transactions reflected in Exhibits F, G, and H. These transactions involved the same category of artwork that is central to the Gallery's business, at price points and with counterparties characteristic of the specialized market in which the Gallery operates.

58.     The documents concerning Client A, Vendor A, Client B, and Consignor B reveal nonpublic client, collector, purchaser, vendor, consignor, pricing, transaction, payment, and shipping information. Public disclosure of those identities and transaction details would harm Plaintiffs' client, vendor, and consignor relationships and would reveal confidential business information that Plaintiffs contend constitutes trade secrets or confidential proprietary information. For that reason, Plaintiffs refer to the relevant nonparty clients, vendors, purchasers, and consignors by pseudonym in this public Complaint and will seek leave to file or lodge unredacted identifying information and unredacted exhibits under seal.

**H.     Moorefield's Use of Gallery Trade Secrets and Confidential Information**

59.     On information and belief, Moorefield used the Gallery's trade secrets and confidential proprietary information — including client lists, client collecting interests, client purchase histories, pricing information, consignor relationships, and

Case No.

23290760.1

artwork authentication and valuation data — to identify potential buyers, match buyers with specific Ansel Adams photographs, price transactions, and broker sales through BMBW.

60. The nature and scale of Moorefield's business activities through BMBW — selling, brokering, consigning, invoicing, and arranging shipment of original Ansel Adams photographs, including works priced at $46,000, $78,000, $525,000, and a mural-sized work invoiced at $775,000 and marked "PAID IN FULL" — would not have been possible without the use of the Gallery's trade secrets and confidential proprietary information. The market for original Ansel Adams photographs is highly specialized, with a limited number of collectors, dealers, and available works. Moorefield's access to the Gallery's proprietary client data, pricing information, and inventory knowledge gave her the ability to compete directly with the Gallery in a market she would not otherwise have been able to enter independently.

61. On information and belief, Moorefield accessed, downloaded, copied, forwarded, or otherwise removed Gallery trade secrets and confidential proprietary information from the Gallery's systems, accounts, devices, and records during her employment and retained such information after her separation for use in connection with BMBW's business activities.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Misappropriation of Trade Secrets Under California Law

### (Cal. Civ. Code § 3426 *et seq.*)

### (By the Gallery Against All Defendants)

62. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 61 as though fully set forth herein.

63. The Gallery owns trade secrets as defined by California Civil Code § 3426.1(d), including but not limited to the trade secrets described in Paragraph 21 above. These trade secrets derive independent economic value, actual or potential,

23290760.1

Case No.

from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. The Gallery has made efforts reasonable under the circumstances to maintain the secrecy of these trade secrets.

64. Defendants misappropriated the Gallery's trade secrets within the meaning of California Civil Code § 3426.1(b) by:

a. Acquiring the Gallery's trade secrets through improper means, including Moorefield's abuse of her position of trust and her breach of her duties of loyalty and confidentiality;

b. Using the Gallery's trade secrets without express or implied consent to identify, contact, and solicit Gallery clients, to price and broker transactions involving Ansel Adams photographs, and to operate BMBW in competition with the Gallery; and

c. Disclosing the Gallery's trade secrets to third parties, including BMBW's customers, consignors, and business contacts, without authorization.

65. Defendants' misappropriation was willful and malicious. Moorefield knew that the information she was using belonged to the Gallery, that she had no authorization to use it outside her employment, and that her use would harm the Gallery. She deliberately concealed her competing business activities from the Gallery while continuing to draw a salary and exploit her access to the Gallery's confidential information. Indeed, Moorefield went so far as to include a contractual provision in BMBW's NDA with Vendor A expressly prohibiting disclosure to the Gallery or the Adams family — a deliberate mechanism to ensure the Gallery would not discover Moorefield's misappropriation.

66. As a direct and proximate result of Defendants' misappropriation, the Gallery has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to lost profits, loss of client relationships, loss of business opportunities, and loss of competitive advantage.

67. Defendants have been unjustly enriched by their misappropriation in an

Case No.

23290760.1

amount to be proven at trial, including but not limited to all profits, commissions, fees, and other proceeds received in connection with transactions involving Gallery trade secrets.

68.    The Gallery is entitled to injunctive relief under California Civil Code § 3426.2 to prevent further misappropriation.

69.    Because Defendants' misappropriation was willful and malicious, The Gallery is entitled to exemplary damages in an amount not to exceed twice any award made pursuant to California Civil Code § 3426.3(a), as provided by California Civil Code § 3426.3(c).

70.    The Gallery is entitled to recover its reasonable attorneys' fees under California Civil Code § 3426.4.

## SECOND CAUSE OF ACTION

### Misappropriation of Trade Secrets Under Federal Law

### (Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.)

### (By the Gallery Against All Defendants)

71.    Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 70 as though fully set forth herein.

72.    The Gallery's trade secrets, as described in Paragraph 21, constitute trade secrets within the meaning of 18 U.S.C. § 1839(3). These trade secrets are related to products and services used in, and intended for use in, interstate and foreign commerce. The Gallery sells and ships original Ansel Adams photographs to clients throughout the United States and internationally, and the Gallery's trade secrets are used in connection with those interstate and international commercial transactions.

73.    Defendants misappropriated the Gallery's trade secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring, disclosing, and using the Gallery's trade secrets without authorization, by improper means, and with knowledge that the trade secrets were acquired through improper means.

Case No.

23290760.1

74.    Defendants' misappropriation was willful and malicious for the reasons set forth in Paragraph 65 above.

75.    As a direct and proximate result of Defendants' misappropriation, the Gallery has suffered and continues to suffer damages, including actual loss and unjust enrichment, in amounts to be proven at trial.

76.    The Gallery is entitled to injunctive relief under 18 U.S.C. § 1836(b)(3)(A) to prevent further misappropriation. The Gallery further reserves the right to seek an ex parte order for the seizure of property necessary to prevent the propagation or dissemination of the trade secrets under 18 U.S.C. § 1836(b)(2).

77.    Because Defendants' misappropriation was willful and malicious, The Gallery is entitled to exemplary damages in an amount not to exceed two times the amount of damages under 18 U.S.C. § 1836(b)(3)(C), and to reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

**THIRD CAUSE OF ACTION**

**Federal Trademark Infringement**

**(15 U.S.C. § 1114)**

**(By Plaintiffs Against All Defendants)**

78.    Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 77 as though fully set forth herein.

79.    Without Plaintiffs' authorization or consent, Defendants have used in commerce reproductions, copies, and colorable imitations of the registered marks in connection with the domain name ansel-adams.com, the email address brittany@ansel-adams.com, and the sale, brokering, and promotion of fine art photography, including Ansel Adams photographs.

80.    Defendants' use of the trademarks including the ANSEL ADAMS marks in the domain name ansel-adams.com and in the email address brittany@ansel-adams.com is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, affiliation, or endorsement of Defendants' goods, services,

23290760.1

Case No.

and communications.

81. Gallery clients have in fact been confused, as evidenced by the May 19, 2026 contact from a client's art consultant expressing concern that invoices from "BMBW Arts LLC" were being sent from brittany@ansel-adams.com in connection with what the client believed were Gallery transactions.

82. Defendants' acts of trademark infringement have been knowing, intentional, and willful.

83. As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have suffered and continue to suffer irreparable injury to their goodwill and reputation, and have suffered damages in an amount to be proven at trial.

84. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116, Defendants' profits, actual damages, costs, and, because this is an exceptional case, reasonable attorneys' fees under 15 U.S.C. § 1117(a). Plaintiffs further seek any permissible enhancement of damages under 15 U.S.C. § 1117(a), provided that any such enhancement shall constitute compensation and not a penalty.

## FOURTH CAUSE OF ACTION

### False Designation of Origin and Unfair Competition

### (15 U.S.C. § 1125(a))

### (By Plaintiffs Against All Defendants)

85. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 84 as though fully set forth herein.

86. Defendants have used in commerce the domain name ansel-adams.com, the email address brittany@ansel-adams.com, and the name and branding of BMBW in connection with the sale and promotion of Ansel Adams photographs, in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with the Gallery, or as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by the Gallery.

COMPLAINT

Case No.

23290760.1

87.    Defendants' false designation of origin constitutes unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

88.    Plaintiffs have suffered direct commercial and reputational injury from Defendants' false designation of origin, false affiliation, and source-confusing conduct. Plaintiffs' injuries fall within the Lanham Act's zone of interests and were proximately caused by Defendants' conduct.

89.    As a direct and proximate result, Plaintiffs have suffered and continue to suffer damages, including harm to their goodwill and reputation, in amounts to be proven at trial. Plaintiffs are entitled to injunctive relief, Defendants' profits, actual damages, costs, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

## Cybersquatting

## (Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))

## (By Plaintiffs Against All Defendants)

90.    Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 89 as though fully set forth herein.

91.    The ANSEL ADAMS marks and THE ANSEL ADAMS GALLERY mark are distinctive and famous within the meaning of 15 U.S.C. § 1125(d)(1)(A).

92.    The domain name ansel-adams.com is identical or confusingly similar to the registered trademarks.

93.    Defendants registered, trafficked in, or used the domain name ansel-adams.com with a bad faith intent to profit from the ANSEL ADAMS marks and THE ANSEL ADAMS GALLERY mark within the meaning of 15 U.S.C. § 1125(d)(1)(A)(i), as evidenced by the following factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i):

    a.    Defendants have no trademark or other intellectual property rights in the domain name ansel-adams.com (Factor I);

    b.    The domain name does not consist of the legal name or common

23290760.1

name of Defendants (Factor II);

c.    Defendants have not previously used the domain name in connection with any bona fide offering of goods or services (Factor III);

d.    Defendants registered the domain name during Moorefield's employment with the Gallery and used it to send confusing communications to Gallery clients, rather than for any bona fide noncommercial or fair use (Factor IV);

e.    Defendants intended to divert consumers from the Gallery's legitimate online location by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' communications and business activities (Factor V);

f.    Defendants have not offered to transfer the domain name to Plaintiffs for out-of-pocket costs or any other reasonable amount but rather have retained the domain name for use in connection with their competing business (Factor VI); and

g.    The WHOIS record for ansel-adams.com does not publicly disclose the registrant's identity, and the registrant contact fields display placeholder or privacy-protected information, preventing Plaintiffs from identifying the registrant without discovery (Factor VII).

94.    The domain name ansel-adams.com was registered on December 31, 2025 — decades after the first use in commerce of the registered trademarks.

95.    Plaintiffs are entitled to injunctive relief, including an order directing the forfeiture, cancellation, or transfer of the domain name ansel-adams.com (Registry Domain ID: 3053206476_DOMAIN_COM-VRSN) to the Trust, the Gallery, or their designee, pursuant to 15 U.S.C. § 1125(d)(1)(C).

96.    Plaintiffs elect, pursuant to 15 U.S.C. § 1117(d), to recover statutory damages in an amount not less than $1,000 and not more than $100,000 per domain name, as the Court considers just, in lieu of actual damages and profits.

23290760.1

## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duty / Duty of Loyalty

### (By the Gallery Against Defendant Moorefield)

97.    Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 96 as though fully set forth herein.

98.    As Director of Fine Art Photography Sales, Moorefield occupied a position of trust and confidence with the Gallery. Moorefield owed the Gallery fiduciary duties, including the duties of loyalty, good faith, candor, and fair dealing. These duties required Moorefield, among other things, not to compete with the Gallery during her employment, not to divert the Gallery's business opportunities for her own benefit, not to use the Gallery's trade secrets and confidential proprietary information for purposes outside her employment, and to disclose any conflicts of interest.

99.    Moorefield breached her fiduciary duties by:

a.    Forming and operating BMBW, a competing business, during her employment with the Gallery, without disclosure or authorization;

b.    Registering the domain name ansel-adams.com, which is confusingly similar to the Gallery's domain, during her employment with the Gallery;

c.    Creating and using the email address brittany@ansel-adams.com to impersonate a Gallery email address;

d.    Using the Gallery's trade secrets and confidential proprietary information — including client lists, client collecting interests, pricing information, and consignor relationships — to identify potential buyers, broker transactions, and compete directly with the Gallery;

e.    Diverting Gallery clients and business opportunities to BMBW for her personal financial gain;

f.    Concealing all of the foregoing from the Gallery while continuing to serve as the Gallery's most senior sales executive and accepting salary, benefits,

Case No.

23290760.1

and access to confidential information; and

g.   Receiving and directing at least $124,000 in transaction proceeds to her personal bank account at Wells Fargo Bank in connection with sales that should have been conducted through the Gallery; negotiating an additional $250,000 acquisition of Ansel Adams and other fine art photographs from a long-time Gallery vendor through BMBW; and participating in, facilitating, invoicing, or arranging shipment for the additional Half Dome transaction reflected in Exhibits F, G, and H, including a $525,000 bill of sale, a $275,000 BMBW flat fee, a $775,000 invoice line marked "PAID IN FULL," and $34,875 in international shipping charges.

100.   Moorefield's breaches of fiduciary duty were intentional, knowing, and undertaken for her personal financial gain at the Gallery's expense. Moorefield's conduct was oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294.

101.   As a direct and proximate result, the Gallery has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to lost profits, lost business opportunities, loss of client relationships, and harm to its goodwill and reputation. The Gallery is entitled to disgorgement of all profits Moorefield obtained through her breaches of fiduciary duty. The Gallery is further entitled to punitive damages under California Civil Code § 3294.

**SEVENTH CAUSE OF ACTION**

**Aiding and Abetting Breach of Fiduciary Duty**

**(By the Gallery Against Defendant BMBW)**

102.   Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 101 as though fully set forth herein.

103.   Moorefield owed fiduciary duties to the Gallery as set forth above. BMBW knew, or should have known, of Moorefield's fiduciary relationship with the Gallery. Moorefield is BMBW's sole organizer, sole manager, and agent for service of process; on information and belief, Moorefield is BMBW's sole member and

23290760.1

Case No.

exercises exclusive control over its activities.

104. BMBW knowingly and substantially assisted Moorefield's breaches of fiduciary duty by serving as the vehicle through which Moorefield diverted Gallery business opportunities, received and processed transaction proceeds, issued invoices to Gallery clients, and conducted competing business activities using Gallery trade secrets and confidential proprietary information.

105. As a direct and proximate result, the Gallery has suffered damages in an amount to be proven at trial, including the same categories of damages set forth in Paragraph 101 above. The Gallery is entitled to disgorgement of all profits BMBW obtained through its knowing participation in Moorefield's breaches.

**EIGHTH CAUSE OF ACTION**

**Intentional Interference with Prospective Economic Advantage**

**(By The Gallery Against All Defendants)**

106. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 105 as though fully set forth herein.

107. The Gallery had existing economic relationships with clients, prospective clients, consignors, vendors, dealers, consultants, collectors, institutions, and other participants in the fine art photography market that contained a probability of future economic benefit to the Gallery.

108. These relationships included, but were not limited to, the Gallery's relationships with long-standing and prospective collectors of Ansel Adams photographs, including Client A, one of Client A's Business Entities, and Client B, and with consignors, vendors, and industry participants, including Vendor A and Consignor B, who had actual or potential commercial relationships with the Gallery involving original Ansel Adams photographs and related fine art photography.

109. The Gallery's relationships with these clients, prospective clients, consignors, vendors, dealers, consultants, collectors, institutions, and other market participants were valuable because the market for original Ansel Adams photographs

27

23290760.1

is highly specialized, involves a limited number of sophisticated collectors and available works, and depends heavily on confidential client preferences, consignor relationships, provenance information, pricing information, trust, reputation, and repeat business.

110.   Moorefield knew of the Gallery's economic relationships because, as the Gallery's Director of Fine Art Photography Sales, she had direct access to and responsibility for the Gallery's client relationships, prospective client relationships, consignor relationships, vendor relationships, pricing information, collecting-interest information, purchase histories, authentication information, and other confidential business information.

111. BMBW knew of the Gallery's economic relationships because Moorefield was BMBW's organizer, agent for service of process, manager, and, on information and belief, sole member and controlling principal. Moorefield's knowledge is attributable to BMBW, and BMBW acted through Moorefield and others acting on her behalf.

112.   Defendants intentionally engaged in wrongful acts designed to disrupt, and that were substantially certain to disrupt, the Gallery's existing and prospective economic relationships. These acts included, but were not limited to:

a.   Registering or causing the registration of ansel-adams.com, a domain name confusingly similar to the Gallery's established anseladams.com domain;

b.   Creating and using the email address brittany@ansel-adams.com, which closely mimicked the Gallery's legitimate employee email convention and created the false impression of affiliation with the Gallery;

c.   Using the Gallery's trade secrets and confidential proprietary information to identify clients, prospective clients, consignors, available works, pricing opportunities, and transaction opportunities;

d.   Soliciting, communicating with, and transacting with the

Case No.

COMPLAINT

Gallery's clients, prospective clients, consignors, vendors, and business contacts for Defendants' benefit and without the Gallery's knowledge or authorization;

e.     Issuing invoices through BMBW for Ansel Adams photographs to the Gallery's clients and directing payment to Moorefield personally or to accounts under her control;

f.     Diverting opportunities that belonged to the Gallery or that Defendants identified through Moorefield's employment with the Gallery;

g.     Concealing these activities from the Gallery while Moorefield remained employed as the Gallery's Director of Fine Art Photography Sales; and

h.     Using BMBW as the vehicle through which Defendants diverted transactions, commissions, profits, relationships, and opportunities from the Gallery.

113.   Defendants' conduct was independently wrongful by legal measures other than the interference itself, including misappropriation of trade secrets, breach of the duty of loyalty, false designation of origin, trademark infringement, cybersquatting, fraudulent concealment, unfair competition, and unauthorized use of the Gallery's confidential and proprietary information.

114.   Defendants' wrongful conduct disrupted the Gallery's economic relationships. The Gallery is informed and believes, and on that basis alleges, that Defendants caused clients, prospective clients, consignors, vendors, and other business contacts to divert transactions, communications, purchase opportunities, consignment opportunities, commissions, profits, and other economic benefits away from the Gallery and to Defendants.

115.   Defendants' wrongful conduct also prevented the Gallery from pursuing, negotiating, completing, or profiting from transactions and business opportunities that the Gallery otherwise would have pursued, negotiated, completed, or profited from in the ordinary course of its Gallery operations.

116.   As a direct and proximate result of Defendants' intentional interference with the Gallery's prospective economic advantage, the Gallery has suffered and

23290760.1                                                          Case No.

continues to suffer damages in an amount to be proven at trial, including lost profits, lost commissions, lost transaction revenue, lost business opportunities, loss of client and consignor relationships, loss of goodwill, and other consequential damages.

117. Defendants' conduct was intentional, willful, malicious, oppressive, and fraudulent, and was undertaken for the purpose of diverting the Gallery's business opportunities and economic relationships to Defendants. The Gallery is therefore entitled to punitive damages against Moorefield and, to the extent permitted by law, against BMBW.

## NINTH CAUSE OF ACTION

### Fraud and Deceit

### (By The Gallery Against Defendant Moorefield)

118. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 117 as though fully set forth herein.

119. Moorefield concealed from the Gallery material facts that she had a duty to disclose, including: (a) that she had formed and was operating BMBW as a competing fine art photography business; (b) that she had registered, caused to be registered, or used the domain name ansel-adams.com; (c) that she had created and used the email address brittany@ansel-adams.com; (d) that she was communicating and transacting with Gallery clients, vendors, consignors, and business contacts outside the Gallery's knowledge and authorization; (e) that she was issuing invoices through BMBW for Ansel Adams photographs; and (f) that she was directing payments from such transactions to herself or accounts under her control.

120. Moorefield also made implied representations to the Gallery that she was acting loyally and exclusively in the Gallery's interests when she continued to serve as the Gallery's Director of Fine Art Photography Sales, accepted salary and benefits from the Gallery, accessed the Gallery's confidential systems and information, communicated with Gallery clients and vendors, and held herself out as the Gallery's senior sales executive.

Case No.
23290760.1

121.   These representations and omissions were false and misleading because, at the same time, Moorefield was secretly operating BMBW, using the confusingly similar ansel-adams.com domain and associated email accounts, soliciting or transacting with Gallery clients and vendors, and diverting business opportunities from the Gallery to BMBW and herself.

122.   Moorefield knew these representations and omissions were false and misleading when made. Moorefield intended that the Gallery rely on her concealment and implied representations by continuing to employ her, continuing to compensate her, continuing to entrust her with client and vendor relationships, and continuing to provide her access to the Gallery's trade secrets, confidential information, systems, devices, and business opportunities.

123.   The Gallery reasonably relied on Moorefield's concealment and implied representations. Had the Gallery known the truth, it would not have continued to employ Moorefield, would not have continued to compensate her, would not have continued to provide her access to its trade secrets and confidential proprietary information, and would have taken immediate action to protect its clients, vendors, consignors, intellectual property, devices, data, and business opportunities.

124.   As a direct and proximate result of Moorefield's fraud and deceit, the Gallery has suffered damages in an amount to be proven at trial, including but not limited to salary and benefits paid during the period of Moorefield's concealed disloyalty, lost profits, lost business opportunities, lost commissions, loss of client and vendor relationships, loss of goodwill, investigation and remediation costs, and other consequential damages. Moorefield's conduct was intentional, oppressive, fraudulent, and malicious, entitling the Gallery to punitive damages under California Civil Code section 3294.

///

///

///

23290760.1

## TENTH CAUSE OF ACTION

### Fraudulent Concealment

### (By The Gallery Against Defendant Moorefield)

125. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 124 as though fully set forth herein.

126. Moorefield had a duty to disclose to the Gallery: (a) the formation and operation of BMBW; (b) the registration and use of the domain name ansel-adams.com and the email address brittany@ansel-adams.com; (c) her outside business activities involving the sale, brokering, and facilitation of transactions in Ansel Adams photographs; and (d) her use of Gallery trade secrets and confidential proprietary information in connection with those activities. This duty arose from Moorefield's fiduciary relationship with the Gallery and her position as Director of Fine Art Photography Sales.

127. Moorefield intentionally concealed these material facts from the Gallery. Moorefield's concealment was not merely passive. As alleged in Paragraph 48, Moorefield affirmatively structured BMBW's business agreements to prohibit third parties from disclosing information to the Gallery or the Adams family, thereby creating a contractual wall of secrecy around her competing activities. Moorefield continued to serve as the Gallery's Director of Fine Art Photography Sales, accepted her salary and benefits, and maintained her access to the Gallery's most sensitive trade secrets and confidential proprietary information — all while secretly operating a competing business.

128. The Gallery did not know of and could not reasonably have discovered Moorefield's concealed conduct until on or about May 19, 2026, when a client's art consultant reported the BMBW invoices.

129. Had the Gallery known of Moorefield's outside business activities, it would not have continued to employ her, would not have continued to provide her access to its trade secrets and confidential proprietary information, and would have

32

Case No.

23290760.1

taken immediate action to protect its business, clients, and intellectual property.

130. As a direct and proximate result of Moorefield's fraudulent concealment, the Gallery has suffered damages in an amount to be proven at trial. Moorefield's concealment was intentional, oppressive, and malicious, entitling the Gallery to punitive damages under California Civil Code § 3294.

**ELEVENTH CAUSE OF ACTION**

**Conversion**

**(By The Gallery Against All Defendants)**

131. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 130 as though fully set forth herein.

132. The Gallery is the owner of the trade secrets, confidential proprietary information, client lists, client data, pricing information, valuation methodologies, authentication data, and other proprietary business information described in Paragraph 21 above. The Gallery is also the owner of the Apple MacBook Pro (asset tag AAG-MBP-005) and the Microsoft Surface laptop (asset tag AA-MBL-04) issued to Moorefield during her employment.

133. Defendants wrongfully exercised dominion and control over the Gallery's property by taking, copying, retaining, and using the Gallery's trade secrets and confidential proprietary information without authorization and for purposes outside the scope of Moorefield's employment. On information and belief, Moorefield has retained copies of Gallery property, data, and information on personal devices, personal cloud accounts, and other locations outside the Gallery's control.

134. Additionally, Moorefield has not returned to the Gallery the Apple MacBook Pro (asset tag AAG-MBP-005) and the Microsoft Surface laptop (asset tag AA-MBL-04) issued to Moorefield during her employment.

135. As a direct and proximate result of Defendants' conversion, the Gallery has suffered damages in an amount to be proven at trial, including the value of the converted property and consequential damages.

Case No.

COMPLAINT

## TWELFTH CAUSE OF ACTION

### Unfair Business Practices

### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

### (By Plaintiffs Against All Defendants)

136. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 135 as though fully set forth herein.

137. Defendants have engaged in business acts and practices that are unlawful, unfair, and fraudulent within the meaning of California Business and Professions Code § 17200.

138. Defendants' conduct is unlawful because it violates the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*), the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*), the Lanham Act (15 U.S.C. §§ 1114, 1125(a), 1125(d)), and California Penal Code § 502, among other statutes.

139. Defendants' conduct is unfair because it offends established public policy favoring the protection of trade secrets, employer–employee trust, and consumer protection against source confusion, and because the harm caused to Plaintiffs and to the public substantially outweighs any utility of Defendants' conduct.

140. Defendants' conduct is fraudulent because Defendants' use of the domain name ansel-adams.com and the email address brittany@ansel-adams.com is likely to deceive members of the public, and has in fact deceived Gallery clients, into believing that Defendants' communications and business activities are affiliated with, authorized by, or connected to the Gallery.

141. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered injury in fact and lost money or property. Plaintiffs are entitled under California Business and Professions Code section 17203 to injunctive relief and restitution of money or property in which Plaintiffs have an ownership or vested interest, including money or property wrongfully obtained from Plaintiffs or traceable to Plaintiffs' clients, business

23290760.1

Case No.

opportunities, trade secrets, confidential information, or intellectual property. Plaintiffs do not seek nonrestitutionary disgorgement under the UCL, but separately seek Defendants' profits, disgorgement, constructive trust, accounting, and other monetary remedies to the extent authorized under Plaintiffs' non-UCL claims.

## THIRTEENTH CAUSE OF ACTION

### Violation of the Computer Fraud and Abuse Act

### (18 U.S.C. § 1030)

### (By The Gallery Against Defendant Moorefield)

142. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 141 as though fully set forth herein.

143. The Gallery maintains computers, computer systems, databases, networks, email systems, and cloud-based services that are protected by access controls, passwords, and other security measures.

144. On information and belief, Moorefield intentionally accessed Gallery computers, systems, files, folders, databases, accounts, or devices that she was not authorized to access, or continued to access Gallery systems after her authorization was revoked, including after her separation from employment. Moorefield also accessed, copied, downloaded, transferred, deleted, concealed, or retained Gallery data without authorization, including Gallery client information, collecting-interest information, pricing and valuation data, and other trade secrets and confidential proprietary information for use in connection with BMBW's competing business activities.

145. Moorefield's conduct was not limited to using otherwise-authorized access for an improper purpose. Rather, Moorefield accessed, obtained, copied, retained, transferred, or used Gallery information, systems, accounts, databases, devices, or data in a manner that was outside the access permissions granted to her and/or after any authorization had been revoked.

146. The Gallery has suffered loss aggregating at least $5,000 in value during

23290760.1

a one-year period as a result of Moorefield's conduct, as required by 18 U.S.C. § 1030(c)(4)(A)(i)(I).

147.   The Gallery is entitled to compensatory damages, injunctive relief, and other equitable relief under 18 U.S.C. § 1030(g).

## FOURTEENTH CAUSE OF ACTION

### Violation of California Penal Code § 502

### (By The Gallery Against Defendant Moorefield)

148.   Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 147 as though fully set forth herein.

149.   Moorefield knowingly and without permission accessed, used, copied, took, and made use of data from the Gallery's computer systems, databases, networks, email systems, and cloud-based services in order to carry out a scheme to wrongfully obtain Gallery trade secrets and confidential proprietary information for use in connection with her competing business, in violation of California Penal Code § 502(c).

150.   The Gallery is entitled to compensatory damages, injunctive relief, and reasonable attorneys' fees under California Penal Code § 502(e).

## FIFTEENTH CAUSE OF ACTION

### Unjust Enrichment

### (By Plaintiffs Against All Defendants)

151.   Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 150 as though fully set forth herein.

152.   Defendants have been unjustly enriched by their wrongful conduct, including the proceeds, commissions, fees, shipping charges, and other compensation from transactions brokered, consigned, invoiced, shipped, or facilitated using Gallery trade secrets, client relationships, vendor and consignor relationships, and confidential proprietary information. Known transactions include at least $124,000 in invoiced sales to Gallery client Client A through Invoice Nos. 0000060 and 0000061,

23290760.1

Case No.

with payment directed to Moorefield's personal Wells Fargo bank account; an additional $250,000 acquisition of Ansel Adams and other fine art photographs from Vendor A through BMBW; and the Half Dome transaction reflected in Exhibits F, G, and H, including a $525,000 bill of sale, a $275,000 BMBW flat fee, a $775,000 invoice line marked "PAID IN FULL," and $34,875 in international shipping charges with associated wire instructions identifying Moorefield 2015 Living Trust as the beneficiary account name/recipient.

153. It would be unjust and inequitable for Defendants to retain these proceeds, which were obtained through misappropriation of the Gallery's trade secrets, breach of Moorefield's fiduciary duties, and unauthorized use of Plaintiffs' marks.

154. Plaintiff are entitled to restitution and disgorgement of all profits and proceeds obtained by Defendants through through their wrongful conduct.

**SIXTEENTH CAUSE OF ACTION**

**Accounting**

**(By Plaintiffs Against All Defendants)**

155. Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 154 as though fully set forth herein.

156. On information and belief, Defendants have conducted business activities, brokered transactions, issued invoices, arranged shipments, received proceeds, and directed proceeds or transaction-related payments in connection with the sale, brokering, consignment, appraisal, shipping, insurance, and facilitation of fine art photography, including Ansel Adams photographs, using Gallery trade secrets, client relationships, vendor and consignor relationships, and confidential proprietary information. The full extent of these activities, transactions, proceeds, accounts, recipients, beneficiaries, and transfers is known to Defendants and unknown to Plaintiffs.

23290760.1

Case No.

157.   Plaintiffs are entitled to an accounting from Defendants of all income, proceeds, commissions, fees, shipping charges, payments, distributions, transfers, and other compensation received, directed, held, transferred, or controlled by Defendants, BMBW, Moorefield, any account associated with Moorefield, and any trust, account, or entity associated with Moorefield, including the Moorefield 2015 Living Trust, in connection with any transaction involving Ansel Adams photographs or other fine art photography, together with all costs, expenses, disbursements, recipients, account information, and transfer records, from at least the inception of BMBW to the present.

## SEVENTEENTH CAUSE OF ACTION

### Constructive Trust

### (By Plaintiffs Against All Defendants)

158.   Plaintiffs repeat and incorporate herein by reference Paragraphs 1 through 157 as though fully set forth herein.

159.   Defendants, and persons or accounts acting in concert with them, hold proceeds, assets, payments, receivables, and property obtained through wrongful conduct, including misappropriation of trade secrets, breach of fiduciary duty, trademark infringement, false affiliation, fraud, conversion, and unfair competition. These proceeds include, without limitation, amounts traceable to Invoice Nos. 0000060, 0000061, and 0000064; payments directed to Moorefield personally; and payments directed to or through accounts associated with Moorefield, including the Moorefield 2015 Living Trust.

160.   It would be inequitable for Defendants, or any account, trust, entity, or person acting in concert with them, to retain proceeds, assets, payments, receivables, or property obtained through Defendants' wrongful conduct. Plaintiffs are entitled to the imposition of a constructive trust over all such proceeds, assets, and property for the benefit of Plaintiffs.

///

///

COMPLAINT

Case No.

23290760.1

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally where applicable, as follows:

1. A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and all persons acting in concert with them from:

A. Using, disclosing, copying, retaining, transmitting, or permitting any third party to use any Gallery trade secrets or confidential proprietary information;

B. Using the domain name ansel-adams.com, the email address brittany@ansel-adams.com, or any domain name, email address, or online identity incorporating "Ansel Adams" or any confusingly similar designation;

C. Representing, suggesting, or implying any affiliation, connection, sponsorship, endorsement, or authorization by the Gallery, the Trust, or any related entity;

D. Using the trademarks or any confusingly similar mark, in connection with any goods, services, domain name, email address, website, or commercial activity;

E. Soliciting, contacting, or transacting business with Gallery clients using Gallery trade secrets or confidential proprietary information;

F. Deleting, altering, destroying, concealing, or otherwise impairing access to any documents, data, communications, devices, or accounts relevant to this action; and

G. Accessing any Gallery system, account, database, device, or property without express written authorization.

2. An order directing the forfeiture, cancellation, or transfer of the domain name ansel-adams.com (Registry Domain ID: 3053206476_DOMAIN_COM-

Case No.

23290760.1

VRSN) to Plaintiff The Ansel Adams Publishing Rights Trust, Plaintiff Best's Studio, Inc. d/b/a The Ansel Adams Gallery, or their designee, pursuant to 15 U.S.C. § 1125(d)(1)(C);

3. Compensatory damages in an amount to be proven at trial;

4. Defendants' profits attributable to their wrongful conduct, pursuant to 15 U.S.C. § 1117(a), Cal. Civ. Code § 3426.3, and 18 U.S.C. § 1836(b)(3);

5. Exemplary damages of up to twice the amount of damages awarded under Cal. Civ. Code § 3426.3(c) and 18 U.S.C. § 1836(b)(3)(C);

6. Punitive damages under California Civil Code § 3294 for Defendants' oppressive, fraudulent, and malicious conduct;

7. Statutory damages of not less than $1,000 and not more than $100,000 per domain name under 15 U.S.C. § 1117(d);

8. Restitution under California Business and Professions Code section 17203 and other applicable law of money or property in which Plaintiffs have an ownership or vested interest, including money or property wrongfully obtained from Plaintiffs or traceable to Plaintiffs' clients, business opportunities, trade secrets, confidential information, or intellectual property;

9. The imposition of a constructive trust over all proceeds, assets, and property obtained by Defendants through their wrongful conduct;

10. An accounting of all transactions, income, proceeds, commissions, fees, payments, and distributions received by Defendants in connection with any transaction involving Ansel Adams photographs or other fine art photography;

11. Reasonable attorneys' fees under Cal. Civ. Code § 3426.4, 18 U.S.C. § 1836(b)(3)(D), 15 U.S.C. § 1117(a), and Cal. Penal Code § 502(e);

12. Costs of suit;

13. Pre-judgment and post-judgment interest as allowed by law; and

14. Such other and further relief as the Court may deem just and proper.

Case No.

23290760.1

DATED:  July 10, 2026                    HANSON BRIDGETT LLP


By:     _/s/ Ryan L. Eddings_
        RYAN L. EDDINGS
        Attorneys for Plaintiff
        BEST'S STUDIO, INC. d/b/a
        THE ANSEL ADAMS GALLERY

DATED:  July 10, 2026                    SRIPLAW, P.A.


By:     _/s/ Matthew L. Rollin_
        MATTHEW L. ROLLIN
        Attorneys for Plaintiff
        THE ANSEL ADAMS PUBLISHING
        RIGHTS TRUST

Case No.
COMPLAINT
23290760.1